## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT DAVIS | : | |
| | : | No. 20-106 |

## MEMORANDUM

PRATTER, J.                                          JANUARY ___, 2024

Robert Davis has been indicted with three counts of trafficking in counterfeit goods in relation to Mr. Davis's "prop pill" website "RCPropPill." Mr. Davis is accused of using the marks of generic and brand pharmaceutical drug companies in producing and distributing counterfeit prescription medications. Mr. Davis now moves to dismiss the indictment, arguing that the prop pills were not drugs and that he was not trafficking in the sale of counterfeit goods because the marks were not connected with the type of drugs for which the marks were registered, that there was no likelihood of confusion, and that Mr. Davis did not market his counterfeit wares as genuine drugs.

However, Mr. Davis has not been charged with distributing drugs with an active pharmaceutical ingredient ("API"); thus, whether Mr. Davis distributed actual pharmaceuticals is irrelevant. And Mr. Davis's argument that he was not trafficking in the sale of counterfeit goods is also without merit because the alleged use of the marks in a manner that supports a likelihood of confusion at any time after the sale is consummated is what matters for the relevant charges, not whether Mr. Davis sold API-containing drugs or whether his direct buyers believed they were

buying API-containing drugs. Thus, Mr. Davis cannot simply embrace the old adage "fake it till you make it," and the Court denies Mr. Davis's motion to dismiss.

BACKGROUND

Robert Davis allegedly ran an Internet-based business known as "RCPropPill" where Mr. Davis allegedly sold "prop pills," or pills that were virtually identical copies of various FDA-approved drugs without containing any active pharmaceutical ingredient ("API"). Mr. Davis allegedly produced prop pills for the prescription opioids oxycodone and hydrocodone and the prescription brand name anti-anxiety drug Xanax. A number of brand and generic pharmaceutical manufacturers registered trademarks with the United States Patent and Trademark Office ("USPTO") for use on pharmaceuticals to distinguish their pills from competing products and assure the public of the drugs' quality and authenticity.

Mr. Davis advertised these counterfeit pills on his website, rcproppill.com, purportedly for use as props in films or music videos. Mr. Davis allegedly carried out the sale of the counterfeit pills from 2015 until August 2019, with proceeds totaling over approximately $100,000. Strangely, buyers discussed taste and tactile requirements of the pills, two attributes that have little cinematic value of purported props. Other customers allegedly discussed repeat purchases of many pills on a weekly or monthly basis. The Government alleges that Mr. Davis sold the counterfeit drugs to drug dealers where the dealers used the fake pills to increase their inventory and sell more pills for profit. The Government contends that the end-purchaser would be unaware of the counterfeit nature of the pills because he or she typically crushes and snorts multiple pills at once where at least one real pill will usually be present among many counterfeit ones so that the user experiences at least some intended effect.

Mr. Davis allegedly used an electric pill press in his residence to manufacture the counterfeit pills and purchased pill punches and dies from China to imprint the goods with the

2

markings and trademarks of various drugs such as oxycodone, hydrocodone, and Xanax. None of the pills contained any APIs. None of the companies holding the relevant trademarks gave Mr. Davis or his company permission to manufacture pills using their marks.

In 2017, while a search warrant was being executed at his residence, Mr. Davis allegedly admitted to agents that he never received permission from the pharmaceutical companies to use their trademarks, trade names, markings, or pill likeness in manufacturing Mr. Davis's own pills.

On May 9, 2023, a federal grand jury returned a three-count Superseding Indictment charging Mr. Davis with trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320(a)(1), and 18 U.S.C. § 2 (aiding and abetting). Each of these charges stems from Mr. Davis's alleged scheme to sell counterfeit trademarked pills on his website, RCPropPill, advertising the fake pills from 2015 until August 2019.

On January 11, 2024, Mr. Davis filed the instant motion to dismiss, seeking to dismiss all charges against him. The Government filed its response in opposition on January 25, 2024.

### LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3) permits a defendant to file a motion to dismiss the indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)). "The question is merely whether the indictment put the defendant[] on notice as to the nature of the charges against [him], and whether the facts, if proven, are sufficient as a matter of law for a jury to convict." *United States v. Ligambi*, No. 09-cr-00496, 2012 WL 2362636, at *1 (E.D. Pa. June 21, 2012).

## DISCUSSION

Mr. Davis first argues that, although he was indicted under 18 U.S.C. §§ 2, 2320(a)(1),[1] he did not actually traffic a drug when a different provision of the relevant code, 18 U.S.C. § 2320(a)(4), specifically addresses drugs. 18 U.S.C. § 2320(a)(4) does in fact make it a crime if someone "traffics in a drug and knowingly uses a counterfeit mark on or in connection with such drug[.]" According to Mr. Davis, he cannot be prosecuted "pursuant to [18 U.S.C.] § 2320(a)(4)" because "the fake/prop pills produced and sold by Mr. Davis do not fall into any definition of 'drug' pursuant to the statute."

However, Mr. Davis was not indicted under 18 U.S.C. § 2320(a)(4); he was indicted under 18 U.S.C. § 2320(a)(1) (trafficking in counterfeit goods) and 18 U.S.C. § 2 (aiding and abetting). Thus, Mr. Davis's argument here is irrelevant because he was not indicted under the drug section of the statute.

To prove a violation of 18 U.S.C. § 2320(a)(1), the Government must prove beyond a reasonable doubt that the defendant "(1) trafficked or attempted to traffic in goods or services; (2) did so intentionally; (3) used a counterfeit mark on or in connection with such goods or services; and (4) knew the mark was counterfeit." *United States v. Diallo*, 476 F. Supp. 2d 497, 500 (W.D. Pa. 2007) (Hardiman, J.) (citing 18 U.S.C. § 2320(a)), *aff'd*, 575 F.3d 252 (3d Cir. 2009). Among the elements to meet the definition of a counterfeit mark, the Government must prove that "the counterfeit mark was used 'on or in connection with' Defendant's goods or services," "the counterfeit mark was used 'in connection with' the type of goods or services for which the protected mark was registered," and "the counterfeit mark was used in a manner 'likely to cause

---

[1]     Mr. Davis mistakenly states that the Government indicted him under 18 U.S.C. §§ 2320(a)(1) and (2); however, Mr. Davis was charged under 18 U.S.C. § 2320(a)(1) (trafficking in counterfeit goods) and 18 U.S.C. § 2 (aiding and abetting). Superseding Indictment, Information Sheet, at 1, Doc. No. 5-3.

4

confusion, to cause mistake, or to deceive.'" *United States v. Hadjiev*, No. 19-cr-548, 2023 WL 3739039, at *5 (E.D. Pa. May 31, 2023).

Mr. Davis argues that the Government cannot sustain any charge under the statute against him because the pills were not used in connection with the type of goods or services for which the marks were registered (*i.e.*, the marks were not used with API-containing drugs but rather counterfeit drugs without any API), there was no likelihood of confusion, and Mr. Davis did not market the pills as genuine drugs. None of these arguments supports dismissing the indictment.

First, Mr. Davis argues that his alleged actions do not meet the criteria to qualify as a counterfeit mark because he distributed the counterfeit pills as prop pills and not as API-containing pharmaceuticals. In other words, because Mr. Davis used the marks to sell *prop pills* and not *actual pharmaceuticals*, he could not have violated 18 U.S.C. § 2320(a)(1) because he did not sell the same type of goods for which the marks were intended to protect, *i.e.*, actual API-containing drugs.

However, at issue here is the allegation that Mr. Davis illegally used the generics and brand companies' *marks* in connection with the sale of counterfeit *goods*, not that he sold counterfeit *drugs*. The relevant elements of the offense here are that the Government must prove that Mr. Davis "trafficked . . . in counterfeit goods" and "used a counterfeit mark on or in connection with such goods." *Diallo*, 476 F. Supp. 2d at 500. The counterfeit goods alleged here are the prop pills. Mr. Davis then allegedly used the marks of the various pharmaceutical companies in connection with those goods. There is no element of the offense requiring that Mr. Davis use the marks in connection with an identical copy of the good the trademark holder produces. It is axiomatic that a counterfeit good is not identical to "the real deal," though Mr. Davis's argument seems to be that a violation of Section 2320 requires that the counterfeit good in this context be the same as or

nearly identical to the legitimate good and be used for the same purpose as the legitimate good. That, however, is not an element of Section 2320; thus, Mr. Davis's argument here does not suffice.

Nor does it logically follow that the Government cannot meet the definition of a counterfeit mark because the mark was not used in connection with the type of good, pharmaceuticals, for which the marks were registered to protect when Mr. Davis did not sell legitimate pharmaceuticals but rather "prop pills" containing no API. *See Hadjiev*, 2023 WL 3739039, at *5 (providing the jury instructions that contained the elements needed to find that something constituted a counterfeit mark). This is, in part, because Mr. Davis's counterfeiting is based on post-sale confusion, which occurs when the direct purchaser buys the counterfeit product in the hope that *subsequent* purchasers are likely to be confused and duped. And "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if [he] continues to supply its product to one whom [he] knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982).

Furthermore, the elements of Section 2320 regarding "use" of the mark are such that "the trafficker may still be prosecuted if he knowingly uses the *mark* on or in connection with a *good*," not that he uses the mark in connection with a *drug*. *Diallo*, 575 F.3d at 260 (emphasis added). And "[t]he intended purpose of a trademark, be it genuine or spurious, is to convey that the *good* meets the design and manufacturing specifications of the lawful owner of the trademark, not only at the time the mark is first affixed or attached to the good, but throughout the lifetime of that good." *Id.* at 261 (citing 15 U.S.C. § 1127) (emphasis added). Regarding Mr. Davis, he allegedly used the various pharmaceutical companies' marks on counterfeit pills that did *not* meet the

companies' specifications, contrary to the core reason for the companies owning their trademarks from the start. Thus, this argument also does not defeat the indictment.

Next, Mr. Davis is mistaken where he argues that there was no likelihood of confusion when he marketed his counterfeit pills as prop pills and not as actual drugs. The plain meaning of the section defining "counterfeit mark" does not "restrict[] [the] scope to the use of marks that would be likely to cause *direct* purchasers of the goods to be confused, mistaken, or deceived." *United States v. Torkington*, 812 F.2d 1347, 1351 (11th Cir. 1987) (emphasis added). It is furthermore sufficient to find that there is a likelihood of confusion where the mark is used in connection with goods or services that could confuse the purchasing public in the post-sale context, not just in connection with the sale to the direct purchaser. *Id.* at 1352. Thus, Mr. Davis's argument here is also without merit.

Finally, Mr. Davis argues that there was no likelihood of confusion where he disclaimed to buyers at the outset that they were purchasing pharmaceuticals without any API. This argument, too, is without merit because the essential goal of Section 2320 is to "protect[] trademark holders" because "trademark holders are injured by counterfeits even when consumers are not defrauded." *Torkington*, 812 F.2d at 1353 n.7. In *United States v. Gantos*, the Court of Appeals for the Eighth Circuit held that Section 2320 was violated even where the defendant affirmatively told direct purchasers that the goods in question, Rolex watches, were copies and counterfeits. 817 F.2d 41, 42-43 (8th Cir. 1987). Considering the two persuasive authorities in conjunction, the Court finds that it does not matter that Mr. Davis advertised the products as counterfeits, especially where there is potential evidence that these drugs would reach end-users who were unaware of the drugs' counterfeit nature. Thus, Mr. Davis's last argument is also unpersuasive.

## CONCLUSION

Mr. Davis's reading of the relevant statutes would render them toothless and stymy their very purpose to prevent the use of counterfeit marks. Thus, Mr. Davis's motion to dismiss is denied.  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE